[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of marriage brought to the Waterbury Superior Court. The parties were married at Marblehead, Massachusetts on June 14, 1959. They each have resided in Connecticut for more than one year prior to this commencement of this action. The court has the requisite jurisdiction to proceed to judgment.
There are no minor children issue of the marriage.
Having heard the evidence and testimony and having considered the provisions of the relevant statutes including Sections 46b-81
and 46b-82, Connecticut General Statutes, the court makes the following findings and orders. CT Page 6145
This is a 39 year marriage.
The plaintiff is 59 years old who has had two knee replacements and still has difficulties with limited range of movement in one knee. She also suffers from arthritis.
She has been a special education teacher having obtained a B.A. and then an M.A. in early childhood education. She has 48 credits toward a degree in special education. At the time of the marriage she was a teacher in Camden, New Jersey. Over the years of the marriage she held various teaching positions in the many different cities where the defendant's army career took the parties. In most of those positions she did not remain employed in a school system long enough to establish any meaningful tenure or benefits. The locations included Philadelphia, Texas, Hawaii, Kentucky, Washington, D.C., Germany, and Fredricks, Va. In 1969, when the defendant entered Brandeis to start his Ph.D. program, the plaintiff remained home to care for the parties' two minor children. She resumed her employment approximately three years later when the defendant obtained his degree and was stationed at Ft. Knox, Kentucky. During the parties' three year stay in Germany, the plaintiff taught in the dependents' school system and later taught adult military personnel.
The plaintiff testified that the condition of her legs has made traditional classroom teaching difficult and painful and she anticipates only one more year before she retires. She offered evidence that should she manage to defer her retirement to the year 2000, her social security benefit will be approximately $229.00 per month.
The defendant is in generally good health, but suffers from hypertension. He also testified that he had diabetes and a sexual dysfunction due to medication.
The defendant graduated from college and for at least twenty years was a member of the U.S. Army. He received considerable training and education while in the service, culminating with his receipt of a Ph.D. from Brandeis. Curiously, despite the appellation of "Doctor" and his extensive employment with mental health and social service agencies (and a stint at Walter Reed Hospital while in the army) his Ph.D. is in social planning, not the medical arts. CT Page 6146
The defendant's far-flung military career was previously noted above.
In January 1981 after the defendant left the U.S. Army, he accepted a position as the director of a clinic in Bethesda, Maryland. He was asked to resign and did in October 1981. One of the parties' two daughters died in an accident approximately one month earlier.
The defendant later obtained a position with the Connecticut Department of Mental Health and resigned after what he described as difficulties with a female deputy commissioner. He then held a variety of positions with the New York Department of Mental Health. He worked first at Albany in a position paying $80,000.00. He was asked to leave in the Spring of 1988. He next went to a regional center in Poughkeepsie. He took a salary cut and commuted to Heritage Village to save on expenses. A problem arose there with a female regional director and he was asked to resign. He took a further salary cut at a position in Sullivan County New York. He voluntarily terminated that employment in June 1997. He subsequently retained an attorney and obtained a severance package of approximately $85,000.00, which is paid to him currently in an amount of approximately $1,634.00 per week, according to his financial affidavit. He then relocated to Washington state with Social Health Services in August 1997 for a starting salary of $64,900.00.
Testimony was elicited that should the defendant retire at age 65, his social security benefit will be approximately $1360.00.
The court finds that the defendant's earning capacity, notwithstanding his current salary of $64,900.00, is and should be no less than $70,000.00, based on his education, skills and professional experience.
The plaintiff testified as to the issues which precipitated the breakdown of the marriage. The defendant's lovemaking became dysfunctional in the early 1980's. He attributed that to medication prescribed for his high blood pressure. In 1987 the plaintiff received an anonymous letter which put the defendant's fidelity in question. She discussed the letter with the defendant and he dismissed it as a malicious lie. She received two more similar letters in 1990-1991. During the last several years of the marriage the defendant lived separately and apart from the CT Page 6147 plaintiff, ostensibly to maintain his employment in Sullivan County, New York and in Washington. During that time the defendant enjoyed numerous trips to among other places California, San Antonio, Philadelphia, Washington, D.C., Philadelphia, the Poconos, Nashville, Plymouth, New Hampshire and Cape Cod. He was accompanied to the last two locations by a woman he describes as a high school classmate. He testified that on neither trip did he engage in any inappropriate sexual conduct. He did testify that on two occasions in the mid-1980's he made sexual overtures to another female acquaintance. She subsequently testified at trial that he did indeed make a request of her to engage in oral sex but she refused. She added that several years later he telephone her while visiting her town and "asked to stay with her." She declined. He also conceded that on a number of occasions he purchase gifts and flowers which he did not give to the plaintiff. He testified they went to friends and to his daughter.
The court finds that the defendant's testimony regarding his platonic relationships is not credible.
Considerable testimony was elicited concerning the defendant's numerous withdrawals from savings, advancements on cash surrender values of insurance policies, loans taken against such insurance policies, expenditure of accrued salary or compensation pay (e.g. unused vacation pay), his extraordinary travels (only some of which is found to be business related), and other forays into funds which are clearly assets of the marriage. There was unrefuted testimony by both parties that approximately $46,000.00 of loans and liquidated assets were used by the plaintiff and defendant for substantial home repairs and improvements to their Heritage Village residence during the later years of the marriage. The court finds that the defendant helped himself, in one way or another, to marital assets in a total amount in excess of $30,000.00 and possibly much more.
The evidence permits a finding that the defendant by his personal and fiscal misbehavior is primarily responsible for the breakdown of the marriage and the diminution of much of the marital estate.
ORDERS
A. BY WAY OF ALIMONY
1. The defendant shall pay to the plaintiff periodic alimony as follows: (a) $300.00 per week until the marital residence is CT Page 6148 sold as hereinafter provided; (b) $250.00 per week after the distribution to the parties of the net proceeds from the sale of the marital residence. That obligation shall continue until the earliest of the following events: the death of either party; the remarriage of the plaintiff; cohabitation by the plaintiff, as that term is defined in the statutes; or the retirement of the defendant. Upon the retirement by the defendant, the financial circumstances of the parties and this order for periodic alimony shall be reviewed to provide for an equalization of their respective net incomes from all sources either by stipulation of the parties or by further orders of this court.
2. By way of lump sum alimony by property distribution, as provided for in the parties written stipulation of January 13, 1998, the defendant shall pay to the plaintiff $1110.00 per month. Said sum represents one half (1/2) of the gross monthly sum of the defendant's U.S. Army pension and V.A. disability pay outs (less the cost of the Survivor Benefit Plan ("SBA")). Said written agreement of the parties is incorporated into this judgment.
3. It is further ordered that the defendant pay to the plaintiff additional lump sum alimony in the amount of $8,680. 55, which sum represents one half (1/2) of the severance payments received by the defendant from his prior employer, Sullivan County New York, from August 18, 1997 to December 4, 1997. Said payment is to be made within 90 days of the date of this judgment.
It is further ordered that the defendant pay to the plaintiff one half (1/2) of all sums received by the defendant as severance payments from December 4, 1997 to date. That amount shall be paid to the plaintiff within 120 days of this judgment. The defendant shall also pay to the plaintiff one half (1/2) of all future severance payments which he may receive in 1998 or for so long as those payments are made available to him.
B. BY WAY OF PROPERTY DISTRIBUTION
1. REAL PROPERTY
(a.) The defendant shall retain all of his right, title and interest in and to his residence located at 1949 S. State Street, Tacoma, Washington. He shall be solely responsible for all costs and obligations for said residence and he shall hold the CT Page 6149 plaintiff harmless thereon.
(b.) The marital residence of the parties located at 954A Heritage Village, Southbury, Connecticut shall be sold. The sale proceeds shall be applied to the cost of such sale, including, but not limited to, sales commissions, conveyance taxes and reasonable attorney fees. The net proceeds remaining shall be paid to the parties as follows: sixty-five (65%) per cent to the plaintiff and thirty five (35%) per cent to the defendant. Until its sale, the parties shall share equally all costs related to the said marital residence including mortgages, taxes, insurance and general maintenance.
2. PERSONAL PROPERTY
(a.) PENSION FUNDS — Each of the parties shall retain his or her right, title and interest in and to their respective pension finds as per the parties written stipulation of January 13, 1998, which is accepted and incorporated herein.
(b.) RETIREMENT ACCOUNTS — The plaintiff shall retain her Merill Lynch Tax Deferred and IRA accounts valued by her on financial affidavit in the amount of $65,145.00. The defendant shall retain his A.G. Edwards IRA account valued at $33,522.00 on his financial affidavit. The defendant shall designate and maintain the plaintiff as the sole beneficiary of his A.G. Edwards account or any successor account into which he may transfer the IRA funds currently contained in said account, for as long as he has an obligation to pay alimony to the plaintiff.
(c.) HOUSEHOLD FURNISHINGS AND CONTENTS — The defendant shall retain all of the furnishings and personal situated in his residence in Tacoma, Washington. The plaintiff shall retain all of the furnishings and personalty situated in the Heritage Village residence with the exception of his personal effects and clothing. At his request, the plaintiff shall reproduce any family photographs in her possession at the defendant's cost.
(d.) AUTOMOBILES — The parties shall retain the right title and interest in and to the automobiles on their respective financial affidavits and shall be solely liable for and hold the other harmless from all costs and obligations on their respective vehicles.
(e.) DEBTS AND LIABILITIES — The plaintiff shall be CT Page 6150 solely responsible for and hold the defendant harmless from the income tax and credit card liabilities listed on her financial affidavit. The defendant shall be solely responsible for and hold the plaintiff harmless from all of the financial liabilities listed on his financial affidavit, as well as the Fleet One Bank Loan listed on the plaintiff's financial affidavit. Excepted from this order is the PFCU Home Equity Loan which is to be satisfied from the proceeds of the sale of the marital residence as set forth hereinabove.
Having found that the marriage of the parties has irretrievably broken down without the prospect of reconciliation, the court hereby decrees that the marriage is dissolved and the parties are single and unmarried.
By the Court,
Joseph W. Doherty, J. Judge